Marvin E. Krakow (SBN 81228)
Law Offices of Marvin E. Krakow
1801 Century Park East, Suite 1520
Los Angeles, CA 90067-2302
Tel: (310) 229-0900
Fax: (310) 220-0912

David C. Vladeck
Richard McKewen
Georgetown University Law Center
600 New Jersey Avenue, NW, Suite 312
Washington, DC 20001
Tel: (202) 662-9540
Fax: (202) 662-9634
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HENRY A. WAXMAN, TOM LANTOS, MAJOR R. OWENS, )
EDOLPHUS TOWNS, PAUL E. KANJORSKI, BERNARD )
SANDERS, CAROLYN B. MALONEY, ELIJAH E. )
CUMMINGS, DENNIS J. KUCINICH, DANNY K. DAVIS, )
JOHN F. TIERNEY, WILLIAM LACY CLAY, DIANE E. )
WATSON, STEPHEN F. LYNCH, CHRIS VAN HOLLEN, )
LINDA T. SANCHEZ, C.A. DUTCH RUPPERSBERGER, )
ELEANOR HOLMES NORTON, & JIM COOPER, )
Members of the United States Congress, )
Committee on Government Reform, )
House of Representatives )
B-350A Rayburn House Office Building )
Washington, DC 20515-6143, )
                Plaintiffs, )
       v. )
TOMMY G. THOMPSON, Secretary, )
Department of Health & Human Services, )
200 Independence Avenue, SW )
Washington, DC 20201, )
                Defendant. )

Civil Action No. CV04-3467 MMM (MANx)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMPLAINT             1

## Introduction

1. This is an action by nineteen members of the House Committee on Government Reform of the United States Congress to enforce their rights under 5 U.S.C. § 2954 and 5 U.S.C. § 7211 (and related statutes) to obtain certain information from the United States Department of Health and Human Services, and Department employees, relating to the estimated costs of the Medicare Prescription Drug and Modernization Act of 2003 ("the Act") signed into law by President Bush on December 8, 2003. Although the Administration and the Congressional Budget Office ("CBO") had informed Congress prior to the Act's passage that the Act would cost $400 billion over the next ten years, after the Act's passage the Administration announced that its true cost would likely be $534 billion over the next ten years – $134 billion more than Congress had been told. By letter to defendant Thompson dated March 2, 2004, plaintiffs formally invoked Section 2954 to request immediate access to the analyses of the Act's anticipated costs prepared by the Office of the Actuary prior to the Act's passage. Although defendant Thompson had repeatedly pledged to make the cost information public, by letter dated April 16, 2004, the Department only provided plaintiffs with a few documents it had already released, and otherwise refused to provide the requested cost information. Defendant Thompson's failure to comply with plaintiffs' request violates Section 2954, which provides that "[a]n Executive agency, on request of the Committee on Government Operations of the House of Representatives, or of any seven members thereof ... *shall submit* any information requested of it relating to any matter within the jurisdiction of the committee." (Emphasis added). And defendant Thompson's interference with the right of agency staff to give this information to Members of Congress violates Section 7211 and related statutes, which forbid agency officials from obstructing the provision of information to Members of Congress by agency staff. Plaintiffs seek declaratory and injunctive relief directing defendant Thompson to carry out forthwith his mandatory duty under Section 2954 and to cease his illegal obstruction under Section 7211.

## Jurisdiction

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

## Parties

3. Plaintiff Henry A. Waxman is a duly elected Member of Congress from California and is the ranking minority member of the House Committee on Government Reform, the successor Committee to the House Committee on Government Operations. *See References in Law to Committees and Officers of the House of Representatives,* Pub. L. 104-14, § 1(6), 109 Stat. 186 (1995). Plaintiffs Tom Lantos, Major R. Owens, Edolphus Towns, Paul E. Kanjorski, Bernard Sanders, Carolyn B. Maloney, Elijah E. Cummings, Dennis J. Kucinich, Danny K. Davis, John F. Tierney, William Lacy Clay, Diane E. Watson, Stephen F. Lynch, Chris Van Hollen, Linda T. Sanchez, C.A. Dutch Ruppersberger, Eleanor Holmes Norton, and Jim Cooper are duly elected Members of Congress and are members of the House Committee on Government Reform. Plaintiffs bring this action to compel the production of information relating to matters within the jurisdiction of the House Committee on Government Reform.

4. Defendant Tommy G. Thompson is the Secretary of the Department of Health and Human Services and is sued in his official capacity. Defendant Thompson is responsible for administering the Medicare program and providing Congress with accurate information relevant to congressional deliberations on legislation to implement and improve the Medicare program. As head of the Department, defendant Thompson is also responsible for the agency's compliance with the dictates of Section 7211 and related statutes.

## Factual Background

5. On December 8, 2003, President Bush signed into law the Medicare Prescription Drug and Modernization Act of 2003 (the "Act"), Pub. L. 108-173, 117 Stat. 2066. The Act provides certain additional benefits to Medicare beneficiaries.

COMPLAINT                                    3

6. Prior to the Act's passage, the Congressional Budget Office estimated that the Act's cost would be $400 billion over ten years.

7. Administration officials, including defendant Thompson and his subordinates, repeatedly told Congress and the public that the cost of the Act would be $400 billion over ten years.

8. On November 17, 2003, President Bush made a statement after meeting with the Medicare conferees: "The bill that will be offered to the House and Senate modernizes and strengthens Medicare. There's 400 billion additional dollars available for our seniors in this bill." Defendant Thompson's subordinate, Thomas A. Scully, the then-Administrator of the Centers for Medicare and Medicaid Services (CMS), wrote in a letter to the editor published by the *New York Times* on November 20, 2003, just two days before the vote in the House: "We are spending $400 billion." Defendant Thompson made the same claim the same day at a National Press Club briefing and on national television four days later.

9. Shortly after the Act was signed into law, Administration officials, including defendant Thompson and his subordinates, revealed that the actual cost of the Act will be more than $534 billion over the next ten years – $134 billion more than the estimate prior to the Act's passage.

10. Administration officials, including defendant Thompson, have conceded to Congress and the public that the Chief Actuary of the Centers for Medicare and Medicaid Services (CMS) analyzed the Act during the summer of 2003 – well before the Act's passage by either House of Congress – and determined that the Act's cost would exceed $500 billion. Notwithstanding the Chief Actuary's analysis, defendant Thompson and his subordinates continued to represent the Act's cost at $400 billion.

11. At no time prior to the vote in the House of Representatives on the Act (then H.R. 1), were any of the plaintiffs informed of the Chief Actuary's analysis of the cost of the Act.

COMPLAINT                                                4

12. Plaintiff Waxman, the ranking member on the Committee on Government Reform and the second-most senior Democrat on the Energy and Commerce Committee, which had jurisdiction over the Act, was not informed of the Chief Actuary's analysis.

13. Defendant Thompson has acknowledged that some lawmakers knew that the CMS's Chief Actuary's analysis of the Act's cost was higher than $400 billion.

14. Defendant Thompson, and/or his subordinates, suppressed dissemination of the Chief Actuary's analysis of the costs of the Act to other Members of Congress, Democrats and Republicans alike, and to the public.

15. While the legislation was awaiting action in the House and Senate, Thomas A. Scully, then-Administrator of CMS, told Richard S. Foster, the Chief Actuary and head of the Office of the Actuary at CMS, that he would be fired if he revealed his costs analysis of the Act. Mr. Foster has also disclosed a June 26, 2003, email that states that there is "a strong likelihood that I will have to resign in protest of the withholding of important technical information from key policy makers for political reasons." Mr. Foster has repeatedly expressed his desire to share the analysis of the Act prepared by his office with Members of Congress, but defendant Thompson and his subordinates continue to obstruct release of the actuarial analysis.

16. The CMS Chief Actuary is appointed by the Administrator of CMS based on his "education and experience," and "superior expertise in the actuarial sciences" and is charged with exercising his duties "in accordance with professional standards of actuarial independence." 42 U.S.C. § 1317(b)(1). By law, the "Chief Actuary may be removed only for cause." *Id.*

17. Federal law forbids federal employees, including department heads like defendant Thompson and his subordinate Scully, from interfering with the "right of [public] employees ... to furnish information to either House of Congress, or to a Committee or Member thereof." 5 U.S.C. § 7211; *see also* Pub. L. 108-199, Division F, "Transportation, Treasury, and

COMPLAINT                                5

Independent Agency Appropriations, 2004," Sections 618, 620, 118 Stat. 354, 355 (Jan. 23, 2004); Pub. L. 108-7, Division J, "Treasury and General Government Appropriations, 2003," Sections 620, 622, 117 Stat. 468, 469 (Feb. 20, 2003).

18. By letter dated February 3, 2004, three senior Members of Congress, plaintiff Henry A. Waxman, Ranking Minority Member, Committee on Government Reform, and Representatives John D. Dingell, Ranking Minority Member, Committee on Energy and Commerce, and Charles B. Rangel, Ranking Minority Member, Committee on Ways and Means, wrote to Defendant Thompson asking that he make available to Congress and the public the cost information that the Administration had available to it when it pushed passage of the Medicare Prescription Drug and Modernization Act. The letter requested that Defendant Thompson disclose analyses prepared by the CMS Office of the Actuary from January 1, 2003 forward relating to (i) S. 1, the legislation that passed the Senate; (ii) H.R. 1, the legislation that passed the House; (iii) versions of the final legislation that were considered by the Conference Committee after Senate passage of S. 1 and House passage of H.R. 1; and (iv) the final legislation signed by the President on December 8, 2003.

19. To date, defendant Thompson has not responded to that letter.

20. By letter dated March 2, 2004, the plaintiffs formally invoked Section 2954 and requested that defendant Thompson make available immediately any analyses prepared by the Office of the Actuary from January 1, 2003 forward, relating to (i) S. 1, the legislation that passed the Senate; (ii) H.R. 1, the legislation that passed the House; (iii) versions of the final legislation that were considered by the Conference Committee after Senate passage of S. 1 and House passage of H.R. 1; and (iv) the final legislation signed by the President on December 8, 2003. The letter explained that the information sought falls within the jurisdiction of the Committee on Government Reform. Any effort by an Executive agency to suppress the dissemination of information relating to the cost of legislation needed by Congress for its deliberations on pending legislative proposals falls within the Committee's

jurisdiction over "Government management and accounting measures generally." Moreover, the Committee on Government Reform, as the House's principal investigative committee, has jurisdiction to investigate "any matter" within the legislative jurisdiction of other committees so that the Committee can make "findings and recommendations."

21. By letter dated March 17, 2004, plaintiff Waxman pointed out to defendant Thompson that Thompson had failed to acknowledge both the February 3, 2004 letter from Representatives Waxman, Dingell and Rangel, and the March 3, 2004 request from nineteen members of the House Committee on Government Reform. The March 17 letter warned defendant Thompson that his failure to abide by the requirements of Section 2954 would lead to litigation.

22. Defendant Thompson has made public statements that the Chief Actuary's analysis of the Act should be made available to all Members of Congress who want to see it.

23. On March 18, 2004, Ms. Raissa Downs, Deputy Assistant Secretary for Health Legislation of the Department and a senior member of defendant Thompson's staff, telephoned plaintiff Waxman's Washington, DC, office and left a voicemail message saying that "we will have that documentation up to you very early next week on Monday" and apologizing for the delay in releasing the material.

24. Between March 18 and March 29, efforts by plaintiff Waxman's staff to contact Ms. Downs and her staff went unanswered.

25. On March 30, 2004, Ms. Downs spoke with Michael Yeager, Esq., Minority Deputy Chief Counsel to the Committee on Government Reform, and informed Mr. Yeager that the Department was "very close to having a response" and that "they are still looking at this."

26. By letter dated April 16, 2004, the Department responded by letter from Dennis G. Smith, the Director of the Center for Medicaid and State Operations, releasing four, already public documents, totaling eight pages, but otherwise refusing to provide plaintiffs

COMPLAINT 7

with any of the responsive records. The letter acknowledges the allegations that the Chief Actuary was threatened with discharge if he provided information to Congress and confirms that the Department's "Inspector General is conducting an inquiry into the facts surrounding this allegation." The letter also states that "HHS made conferees aware that HHS expected its final scoring to be higher than CBO's final scoring." This information was not, in fact, provided to any of the Democratic conferees from the House of Representatives – Rep. Charles Rangel, the ranking member of the Ways and Means Committee, Rep. John Dingell, the ranking member of the Energy and Commerce Committee, and Rep. Marion Berry. Accordingly, Mr. Smith's letter confirmed that the Administration shared information about its cost assessments selectively.

27. By letter dated April 26, 2004, to defendant Thompson, the plaintiffs specially requested the information shared with Republican conferees and again asked that their previous requests be complied with forthwith.

28. To date, defendant Thompson has not responded to the plaintiffs' April 26 letter.

## Claims for Relief

29. Section 2954 of Title 5 of the United States Code imposes a mandatory, non-delegable duty on defendant Thompson, the head of an Executive agency, to provide information to the Committee, or any seven members thereof, upon request. By failing to provide the requested information, defendant Thompson has violated and continues to violate his duty under the law. Defendant Thompson has further violated a mandatory duty "owed to the plaintiff[s]," in violation of 28 U.S.C. § 1361. By "fail[ing] to act" in a timely fashion to provide plaintiffs the information to which they are entitled, defendant Thompson has violated and continues to violate the Administrative Procedure Act, which empowers this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 551(13), 706(1).

30. Defendant Thompson has also violated and continues to violate 5 U.S.C. § 7211, which provides that "[t]he right of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied." Defendant Thompson has also violated related provisions of law. *See* Pub. L. 108-199, Division F, "Transportation, Treasury, and Independent Agency Appropriations, 2004," Sections 618, 620, 118 Stat. 354, 355 (Jan. 23, 2004); *see also* Pub. L. 108-7, Division J, "Treasury and General Government Appropriations, 2003," Sections 620, 622, 117 Stat. 468, 469 (Feb. 20, 2003). Defendant Thompson and his subordinates have obstructed and denied, and continue to obstruct and deny, the right of Richard S. Foster, the Chief Actuary of CMS, and members of his staff, to provide plaintiffs with information they seek.

31. Defendant Thompson's failure to obey the dictates of 5 U.S.C. § 2954, 5 U.S.C. § 7211, related statutes, and the Administrative Procedure Act deprives plaintiffs of important information to which they are entitled by law, and thereby caused and will continue to cause plaintiffs serious and irreparable injury. As a result of defendant Thompson's failure to provide the information in a timely fashion, and defendant Thompson's continued interference with the of the right of the Chief Actuary and his staff to provide the information to Members of Congress, plaintiffs are harmed in many ways, including, but not limited to, their ability to assess whether legislation is needed to prevent defendant Thompson and his successors from concealing relevant actuarial information about the cost of Medicare and Medicaid programs from Congress in the future; whether, in light of the dramatic discrepancies in cost, Congress should revisit the Medicare Prescription Drug and Modernization Act of 2003; and whether more substantial protections should be put in place to ensure that defendant Thompson and his subordinates, and other senior government officials, do not continue to interfere with the right of government employees to report relevant information to Congress.

COMPLAINT                                        9

**Demand for Judgment**

WHEREFORE plaintiffs respectfully request that the Court enter an order:

(A) Declaring that the failure of defendant Thompson to provide plaintiffs in a timely manner the analysis of the Medicare Prescription Drug and Modernization Act of 2003 by the CMS Office of the Actuary violates 5 U.S.C. § 2954, the Administrative Procedure Act, and 28 U.S.C. § 1361;

(B) Directing defendant Thompson to provide to plaintiffs the withheld records forthwith;

(C) Declaring that the efforts by defendant Thompson and his subordinates to interfere with and deny the rights of CMS Office of the Actuary employees to provide information to Congress and Members of Congress violate 5 U.S.C. § 7211 and the Administrative Procedure Act;

(D) Directing defendant Thompson to cease any and all efforts to interfere with or deny the right of CMS Office of Actuary employees to provide information to Congress or any Member thereof and to take all steps necessary to ensure that the Chief Actuary and his employees are free to exercise their statutory right to provide information to Congress;

(E) Granting plaintiffs such other and further relief as the Court deems just and proper; and

(F) Awarding plaintiffs their costs and attorneys' fees in this action

Dated: May 14, 2004

Marvin E. Krakow

COMPLAINT                                    10